In the Matter of the Judicial Settlement of the Account of William L. Denton, as Surviving Executor, etc.

The rule that where there is a bequest to one person, absolutely, and in case of his death without issue, to another, the contingency referred to is a death in the lifetime of the testator, does not apply when a point of time other than the death of the testator is mentioned, to which the contingency can be referred, or to a case where a life estate intervenes, or where the language of the will evinces a contrary intent.

D. died leaving his wife and five children him surviving; by his will he gave to his widow the use of his homestead during life; upon her death, the executors were directed to sell and dispose of the same; he also gave to her and to H., a daughter, the use of $8,500 during the life of his widow. In case H. died before the widow, the latter to have the use of $7,500 during her life. In case H. survived the widow, to the former was given, after the death of her mother, the use of $4,500 during her life. The residuary estate was given to the four other children, with this proviso, "that in case of the death of either of them, leaving issue, before either of the different parts thereof * * * can be divided, then such issue to take the share or part the parent would have been entitled to, if living; if without issue, then the survivors to take." E. a son, died first, leaving a wife surviving; he had issue, but left none surviving him. H. died next, and then the testator's widow. In proceedings for final settlement of the accounts of the executors, *held*, that the death referred to in the residuary clause, was not a death during the lifetime of the testator; that the words "leaving issue," could not be construed as reading "without having had issue;" that the scheme of the will contemplated a residue divisible into at least three parts, distributable at different times, and if prior to the time any one part could be distributed, either of the four beneficiaries named had died, and there was at that time issue of such decedent surviving, the issue would take the share such beneficiary would have taken if living; if not, then the surviving beneficiaries would take; that, therefore, the gift to E. as to so much of the residuary estate as was not distributable at his death, was defeated by his death without issue surviving, and his share went to the three surviving beneficiaries.

Upon modification of a surrogate's decree, the General Term has power to determine as to whether the appellant shall be allowed costs in the surrogate's court and the exercise of its discretion, this court has no power to review.

(Argued March 3, 1893; decided March 14, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered

upon an order made May 28, 1891, which reversed a judgment entered upon a decree of the Surrogate's Court of Queens county, settling the account of William L. Denton as surviving executor of Amos Denton, deceased.

The questions at issue were dependent upon the construction to be given to the will of the decedent. The provisions thereof, so far as material, are as follows :

"*First.* I order my just debts and funeral and testamentary expenses paid out of my estate.

"*Second.* Having already given to my two sons, Elias B. and William L., and my daughter, Elizabeth, five hundred dollars each, and my said two sons, three acres of woodland each, I now give my son Amos five hundred dollars, and devise to him three acres of my woodland, adjoining his brother William's.

"*Third.* I give my daughter, Elizabeth, five hundred dollars, one-half to be paid to her within one year after my death out of my residuary estate, and the other half payable at the death of my wife out of the money I shall herein give my wife the use of.

"*Fourth.* I give to my wife, Patience, during her life, the use, income and rents of the house and premises on which I now reside, situate on the westerly side of Canal street, in the village of Jamaica, and also the use of the household and kitchen furniture of every description. *   *   *

"*Fifth.* I authorize and empower my executors at any tim ₁ during the lifetime of my said wife — with her consent, however, in writing — to sell and dispose of my said house and land in Canal street, and the money arising from such sale to invest at interest, and the interest of the same I give to my said wife and to my daughter, Hannah Ann, during the life of my wife.

"*Sixth.* I give to my wife, Patience, and to my daughter, Hannah A., the use or interest of eight thousand five hundred dollars during the life of my said wife. If, however, my daughter, Hannah A., should die before my wife, then from and after the death of my said daughter, I give my said wife the use of seven thousand five hundred dollars during her

life; and the remaining one thousand dollars I give my four children, namely, Elias B., William L., Elizabeth and Amos, each one-fourth. In case my said daughter, Hannah A., survives my said wife, then from and after the death of my wife I give to my daughter, Hannah A., the use of four thousand five hundred dollars during her life.

"*Seventh.* I order and empower my executors to sell and dispose of my meadow land as soon as convenient after my death, and the money arising from such sale I give to my said four children, Elias B., William L., Elizabeth and Amos.

"*Eighth.* If my house and lands in Canal street are not sold during the lifetime of my wife, then at her death I order and empower my executors to sell and dispose of the same at such time after said event as they deem proper.

"All I have herein given to my wife is in lieu of dower and of all other claims.

"*Ninth.* All the rest, residue and remainder of my estate I give and bequeath to my said four children, namely, Elias B., William L., Elizabeth Hendrickson and Amos, equally between them; and in case of the death of either of them leaving issue before either of the different parts thereof as hereinbefore mentioned can be divided, then such issue to take the share or part the parent would have been entitled to if living; if without issue, then the survivors to take."

The material facts are stated in the opinion.

*John Fleming* for appellant. Elias B. Denton having survived the testator became absolutely vested of a one-fourth interest. (*Livingston* v. *Green*, 52 N. Y. 118; *Embury* v. *Sheldon*, 68 id. 235; *Quackenboss* v. *Kingsland*, 102 id. 128; *Vandezee* v. *Slingerland*, 103 id. 47; *Van Zandt Case*, 105 id. 89; *Freeman* v. *Coit*, 96 id. 68; *Clarke* v. *Leupp*, 88 id. 231.) Elias B., survived the testator the utmost period fixed in the will, viz.: the division of either of the different parts, and so his share absolutely vested in him. (*Chrystie* v. *Phyfe*, 19 N. Y. 350; *Bedell* v. *Guyon*, 12 Hun, 396; *In re Mahan*, 98 N. Y. 376; *Kelly* v. *Kelly*, 61 id. 47.) Elias B. died leaving issue within the meaning of words used by testator. (*Treharne* v. *Lay-*

*ton,* 14 Eng. Rep. 282 ; 81 N. Y. 358.) The General Term erred in vacating allowance ($500) made to contestant by surrogate. (Code Civ. Pro. § 2561 ; *McKeon* v. *Kearney,* 85 N. Y. 140 ; *Hannah Case,* 5 Hun, 644.)

*Henry A. Monfort* for respondent. The gift over contained in the residuary clause of the will in the event of the death before the final settlement of the estate of either of the residuary legatees to the issue of such legatee, or in default thereof, to the survivors, is valid and should be given effect. (*Hennessey* v. *Patterson,* 85 N. Y. 91 ; *Quinn* v. *Hardenbrook,* 54 id. 83 ; *Wood* v. *Mitcham,* 92 id. 375 ; *Knowlton* v. *Atkins,* 56 Hun, 408.) Elias B.'s interest, under the residuary clause, in the property covered by the life estates, was contingent and lapsed upon his death pending the running of those estates. (*Magill* v. *McMillan,* 23 Hun, 193 ; *Toder* v. *Hatfield,* 71 N. Y. 92; *Teed* v. *Morton,* 60 id. 502 ; *Vincent* v. *Newhouse,* 83 id. 505 ; *Gilman* v. *Redding- ton,* 24 id. 9 ; *Kelso* v. *Lorillard,* 85 id. 177 ; *Henderson* v. *Henderson,* 113 id. 1 ; *Hennessey* v. *Patterson,* 85 id. 91; *Knowlton* v. *Atkins,* 56 Hun, 408.) The allowance by the Surrogate's Court of $500 costs to the appellant, Elizabeth Denton, the widow of the testator's son, Elias B., was erroneous. (Code Civ. Pro. § 2561.)

MAYNARD, J.   This appeal involves the construction of the ninth or residuary clause of the will of Amos Denton, who died in 1857 and who left surviving him a widow, three sons, a married and an unmarried daughter.

By the clause in question he gave the residue of his estate to the three sons and the married daughter, to be divided equally between them, and added this paragraph, which has given rise to the present controversy, " In case of the death of either of them, leaving issue before either of the different parts thereof as hereinbefore mentioned can be divided, then such issue to take the share or part the parent would have been entitled to if living ; if without issue, then the survivors to take." " The different parts " here intended, manifestly

have reference exclusively to the residuary estate, and the appropriateness of the term is at once apparent, if we consider the other provisions of the instrument. Under the scheme of the will the testator evidently contemplated a residue divisible into at least three parts and distributable at three different periods of time. If the personal estate was sufficient to pay debts and expenses and a legacy of five hundred dollars to one of the sons and to create a fund of eight thousand five hundred dollars for the use of his wife and unmarried daughter, the remainder would be at once divisible among the residuary legatees. If the wife died before the unmarried daughter, four thousand dollars and the proceeds of the sale of the homestead would be released and fall into the residuary estate and become subject to distribution; and upon the death of the unmarried daughter, if she survived her mother, there would be the further sum of forty-five hundred dollars to be finally distributed. The order of distribution and the sums available at different times for that purpose might be varied in the event of the wife surviving the daughter, but the ultimate disposition of the estate would not be materially changed. But when either one of these parts was capable of division, it might happen that one or more of the legatees would not be living and the occurrence of such a contingency was specially provided for. It is clear that the testator intended to limit the distribution of his residuary estate to the issue of his own blood, and in the clause which he added and which we have quoted above, he has expressed such intention in language so plain that we think it is susceptible of no other reasonable construction. If at the time any part of the residue could be divided, there was the issue of a deceased legatee surviving, such issue would take the share given to such legatee, otherwise the surviving legatees would take the whole of such part.

One of the sons, Elias B. Denton, died in 1878, without leaving any issue surviving him. The appellant here is his widow, to whom he gave by will his entire estate, and who insists that, as his legatee, she is entitled to one-fourth of the residuary estate created by his father's will.

The unmarried daughter died in 1879, and the widow of the testator in 1887. The executor instituted proceedings for a final accounting and distribution of the estate after her death, upon which it appeared that the property remaining for distribution consisted of the proceeds of the sale of the homestead, and the principal and accrued interest of the fund of seventy-five hundred dollars, which remained for the use of the widow after the death of the unmarried daughter.

Elias B. Denton had six children born to him, all of whom predeceased him, and four of whom died in the lifetime of the testator, and when the will was executed he had no children living.

The surrogate held that the residuary legacy to Elias B. was not defeated by his death, without issue surviving; that the contingency upon which his estate depended was the birth of issue, and not its survivorship, and that the condition attached to his legacy was satisfied by the proof of the existence of issue in his lifetime, in other words, that the phrase " without leaving issue," was equivalent, in the connection in which it was used, to the phrase, " without having had issue." He also held, that as the son survived the period, when one of the parts of the residue might have been divided, the contingency had not occurred, upon the happening of which his share of the other parts of the residue was given to the surviving brothers and sister. The General Term, by a divided court, reversed the decree of the surrogate, and excluded the representative of the deceased son from all participation in the distribution of the residuary estate.

The appellant's counsel invokes the rule of construction that when there is a bequest to one person absolutely, and, in case of his death without issue to another, the contingency referred to is a death in the lifetime of the testator. But this rule has only a limited operation, and cannot be extended to a case where a point of time is mentioned other than the death of the testator, to which the contingency can be referred, or to a case where a life estate intervenes, or where the context of the will contains language evincing a contrary intent. ( *Van*

*Derzee* v. *Slingerland,* 103 N. Y. 47; *Matter of N. Y., L. & W. R. R. Co.,* 105 id. 89; *Fowler* v. *Ingersoll,* 127 id. 472; *Mead* v. *Maben,* 131 id. 255; *Mullarkey* v. *Sullivan,* 136 id. 227.) All the circumstances which preclude the application of the rule exist in the present case. The contingency plainly refers to the time when each part of the residue becomes distributable; the life estate of the wife and daughter intervenes before the event can be finally determined upon which the contingency depends; and it is evident from the context that it was not his own death which the testator had in mind when he made the survivorship of the residuary legatee a condition, which must be shown to exist before he can be admitted to share in the distribution of the fund.

It would also be subversive of the manifest purpose of the testator to hold that if the legatee survived the time when but a single part of the residue could be divided, his right to share in the distribution of the subsequent parts became vested and indefeasible.

The term "either of the parts" is here used distributively, and is equivalent in meaning to each or every one of the parts. The condition is annexed to each part, and the testamentary plan, which seeks to preserve the estate in the family of the testator, is thus rendered consistent in scope, and rational in application. For the same reason we cannot adopt the suggestion, that the contingency in this case of death "without issue" is eliminated because it appears that Elias B. Denton had issue in his lifetime. The last clause of the proviso in the residuary paragraph, "if without issue, then the survivors to take" is an elliptical form of expression, and is antithetic to the first clause which relates to the time of the death of the son, and if fully written out, would be a declaration to the effect that "if either of my said children should die before either part of the residue of my estate can be divided, without leaving issue, then the surviving legatees shall take the share or portion of such part which the deceased legatee would have been entitled to if living."

Upon the modification of the surrogate's decree, the General

Term had discretionary power to determine whether the appellant here, should be allowed costs in the Surrogate's Court, and we have no jurisdiction to review the exercise of its discretion.

The judgment appealed from must be affirmed, with costs to both parties to be paid out of the estate.

All concur.

Judgment affirmed.