EDWARD A. THOMPSON, Executor, Etc., of EMILY E. THOMPSON, Deceased, and Individually, Plaintiff, *v.* EMMA L. VIDAL, Defendant.

(Supreme Court, New York Special Term, August, 1899.)

**Remainder — Provisions contingent on the death of the remainderman during the life of the testatrix.**

The will of a testatrix, whose son and daughter were married when she made her will and whose son was then childless, gave by its second clause all her residuary estate to her son and to her daughter,

share and share alike. The third clause provided that, if the son died without lawful issue him surviving or surviving issue not attaining the age of twenty-one years, then his share should go to the daughter. The fourth and fifth clauses provided that her executors, her son and her husband, might sell the realty and dispose of the personalty, but that the husband during his life should receive the net income of the whole. The testatrix survived her husband and died seventeen years after making her will.

Held, that each of the children was entitled absolutely to a moiety of the whole estate.

That the contention of the daughter, that the son only took an interest which was defeasible, in her favor, if he did not leave issue or if his surviving issue did not attain majority, was untenable, as these dispositions of the third clause, made dependent on the death of the son, were intended to have effect only in the event of his having died during the lifetime of the testatrix.

ACTION for the construction of a will.

Jacob S. Van Wyck, for plaintiff.

Lexow, Mackellar & Wells (Geo. M. Mackellar, of counsel), for defendant.

RUSSELL, J. The plaintiff and defendant unite in requesting the court to construe the will of the deceased Mrs. Thompson. She was the mother of these two parties, they being her only children. Her death occurred the 30th of March, 1898, and she left realty in the city of New York of the value of $110,000, subject to a mortgage of $25,000, and $5,000 of personal property. Her will was executed on the 15th of March, 1881, seventeen years before her death. At that date her daughter, the defendant, was a married lady with three children, and her son, the plaintiff, had been but a few months married, having no children. Her husband, Austin D. Thompson, died the 7th of June, 1892, she surviving him nearly six years.

She gives no specific legacies, appoints her husband and son executors, and directs the disposition of her property save enough to pay her debts and funeral expenses, as follows:

" *Second.* I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of whatever name,

nature or description and wheresoever situated, of which I may die seised or possessed or may in any manner be entitled to, to my daughter Emma L. Vidal, wife of Peter M. Vidal, and my son Edward A. Thompson, share and share alike.

" *Third.* In case my said son Edward A. Thompson shall die, without lawful issue him surviving, or, in case my said son shall die leaving issue, but such issue shall not attain the age of twenty-one years, then I direct, that my said son's share of my estate, shall go to my said daughter Emma L. Vidal, or to her lawful issue.

" *Fourth.* I hereby direct that the foregoing disposition of my said estate, shall be subject to the use, of the whole thereof, by my husband, Austin D. Thompson, so long as he shall live, as hereinafter set forth.

" *Fifth.* I empower my said executors, if in their judgment it is for the benefit of my estate, to sell and convey any real estate, and to dispose of any personal property, of which I may die seised or possessed, and convert the same into money, and to invest the same, as in the judgment of my said executors shall be for the benefit of my estate, and to collect the rents and profits issuing out of my said estate, and apply the same;—

" (1). To the payment of taxes, assessments, water rents, insurance, and the keeping of the property in proper repair.

" (2). The surplus to the use of my said husband Austin D. Thompson as hereinbefore set forth."

The plaintiff claims that he and his sister take an absolute estate, share and share alike, in the realty and personalty left by the mother, the father being deceased, and that the contingencies mentioned in the third clause of the will refer only to events happening before the death of the testatrix. The daughter claims that the contingent limitation, in the event of the son's leaving issue who should not attain the age of twenty-one years, is void as unduly suspending the power of alienation for more than two possible lives, so that the son took a defeasible fee with remainder to the sister in case he shall die leaving no·issue.

In construing the intent of the testatrix we must give effect to her language even if she imposes any void limitations upon her property, although such a conclusion may also be taken into consideration in the determination as to whether her main intent can be legally consummated. It is, therefore, proper to view the effect of her will if it is held that she intended that the determination of the share of Edward and his descendants was postponed

until the future ascertained, at a time when the testatrix was no longer in existence and Edward also had passed away, whether any of his issue had survived the period of twenty-one years of life.

We first observe that by this construction she does not treat her son and daughter the same, nor does she give them " share and share alike." By the evidence each seem to have an equal place in her affections, and she evidently rests fully as much confidence in the son as in the daughter, for she makes him her executor with her husband, and intrusted him with the management of her property after the death of that husband. She gives him only a life estate, with no interest in any of the property absolutely. He is simply a tenant to hold the share and pass it over at his death to his sister, without the power to give to his own dependent wife a particle of that property, leaving it to be determined in the unknown future, by the force of his mother's will, whether any of his children or grandchildren shall survive to the age of twenty-one years, in which event it is then and then only proven that he took during life a fee to one-half of the realty, which was never coupled with the beneficial power of disposition, for the event never occurred during his life which demonstrated the character of his title. She thus not only destroys the equality benefit of her own will, in which she expresses her primary intention of treating her children alike, but places the possible children of her son in a position of gross inequality with those of the sister, and involves a moiety of her estate in perplexity and doubt for many years after her decease. At the time of making her will she had no reason to apprehend that issue would not come to her son as well as other children to her daughter.

By this construction she also renders void a part of her declared intent, for any limitation is void by which the power of alienation will not, under all possible circumstances, be capable of execution after two lives in being. Schettler. v. Schettler, 41 N. Y. 328.

Here the lives of possible children or grandchildren of Edward may have to ripen from infancy to manhood, or womanhood, before the event occurs which relates back to show that Edward had an absolute title, which was not defeated by the failure of issue to arrive at the age of twenty-one years.

Again, if we consider the will as construed by the defendant, we find the daughter claiming that the mother has made a will giving her absolutely one-half and the son one-half if he leaves issue, and utterly ignoring the farther decided expression of the

testatrix's intent that such issue must attain the age of twenty-one years. So far as the court can ascertain the wish of the testatrix, the contingency of issue surviving to the age of twenty-one years was as important in her estimation as the fact of leaving issue at all.

We thus conclude that, upon either construction considered so far, the scheme of the will is not consistent or probable. If we take a different view of all of the contingencies referred to in the third clause the solution becomes practically easy. There is an absolute certainty of death to all human beings, although the time when it may occur is in the uncertain future. Hence it is always a question whether a testator limits an estate devised by a contingency which is to occur before the death of that testator, or thereafter. The general rule of the courts is that the devise over in case of death refers to such an event occurring after the making of the will, but before the death of the testator. Matter of N. Y., L. & W. R. Co., 105 N. Y. 89; Mead v. Maben, 131 id. 255; Vanderzee v. Slingerland, 103 id. 47.

The law favors equality in children, and a construction which shall vest the estate at the death of the testator. The rule was so applied where a life estate was given to the wife, and the remainder to the children, but in case of the death of a son the remainder was to go to two grandchildren. It was held to refer to the death of the son during the lifetime of the testator, and to be a prudent direction for division to avoid intestacy. Stokes v. Weston, 142 N. Y. 433.

It is true that slight circumstances referred to in the will may indicate a different intent on the part of the testator. But in the case at bar the whole tenor of the will, and the situation upon which that will was founded, indicate clearly that no such discrimination as is claimed by the defendant was intended by the testatrix, and, therefore, the application of the general rule is strengthened, rather than shaken, by the evident purpose with which she acted.

It is also ordinarily the rule that where a life estate intervenes after the death of the testator, the contingency of the decease of a remainderman refers to a death occurring after the testator has died. Matter of Denton, 137 N. Y. 428.

But the provision for the net income for the life of Austin D. Thompson, the husband, was not intended as an unqualified estate in him. The executors were empowered to sell and convey real and personal property and invest the proceeds; to pay the taxes,

Supreme Court, August, 1899.        [Vol. 28.

assessments, water rents, insurance and for proper repairs, and give the surplus to the husband for his use. The distinct power, therefore, to deal with the property was intrusted to the husband and son as executors, giving the beneficial net income to the husband for life.

The construction, therefore, is that the contingencies referred to in the third clause of the will cease to be effective at the death of the testatrix, and that the second or disposing clause of the will is in full force without limitation. Thus each of the two children became entitled at the death of the testatrix to a moiety of the real and personal property.

Ordered accordingly.